Good morning. May it please the Court, Mark Drozdowski from the Office of the Federal Public Defender, on behalf of Petitioner-Appellant Robert Gonzales. A timely filed state habeas petition tolls the one-year period to file a federal petition. The question in this case is whether the California Court of Appeals' summary denial clearly indicates that Gonzales' pro se petition was untimely and therefore did not toll the federal statute. The magistrate judge answered this question yes, and therefore dismissed Gonzales' pro se federal petition as filed 27 days late. Under controlling law, the answer is no, and this Court should reverse and remand for consideration on the merits. Evans v. Chavez provides the rule in this case. That rule is that in the absence of a clear indication that a state petition is timely or untimely, the Federal Court must examine the delay and decide timeliness on its own. Here, there is no clear indication of untimeliness. Gonzales filed one full round of no indication, no clear indication of untimeliness when we look at the order as a whole. And we have to look at the context here. He filed the same claims in each court. And in the Superior Court, he filed his initial petition there just four-and-a-half months after his, after the conclusion of direct review. And the Superior Court order is quoted on page 6 of our brief. And you'll see that it denies six of the claims because they could have been, but were not, raised on appeal. That's the Dixon rule. Now, this Court cites Reno for it, but Reno talks extensively about Dixon. The Superior Court also says defendant's last round for appeal is inadequacy of trial and appellate counsel. It says defendant failed to present sufficient facts warranting relief. The Attorney General agrees that's a denial on the merits, and that petition was properly filed and provides tolling. Less than three weeks later, Gonzales filed the same pro se petition in the California Court of Appeal. And now we get the order here. And we'll see, again, that order is on the next page of our brief, page 7. The only sentence of text that explains the decision says the petition is denied for failure to state sufficient facts demonstrating entitlement to the relief requested. That's the same rationale given by the Superior Court for the merits denial of the two ineffective assistance claims. And the Court cites Duval for that, and the pages of Duval discuss two rules. One is about pleading requirements, and the other is about denials on the merits. The Attorney General argues that this is a denial on the merits. Either way, this Court's law holds that those – either one of those denials is properly filed and tolls to Federal statute. Now we get to the N. Ray Clark's See Also site, which is what brings us all here this morning. And it cites page 765. And that page cites three different procedural bars. One is the Dixon bar for not – for raising claims that could have been raised on appeal. The other is the Waltrius bar for re-raising claims that were already resolved on appeal. And one is the time bar. Okay? Waltrius doesn't apply because Mr. Gonzalez did not re-allege any claims from appeal. Dixon, right, Dixon would apply because we have the same claims that the Superior Court denied, six of them, for Dixon. Same six claims are here. So I think the most reasonable interpretation is that the citation to Clark is a reference to the Dixon bar. It makes no sense that this case is – is untimely. And, right, we know from Chavez that moving between the lower court to the higher court, if you do it within 30 or 60 days, that's within a reasonable time. It's not an issue in this case. That could not be the reason for untimeliness because he filed less than three weeks. What was the interval here? The interval here was he loses in the Superior Court and less than three weeks later he files in the Court of Appeal. Then once he loses in the Court of Appeal, less than one month later he files in the California Supreme Court. Once he loses there, less than six weeks later he files in Federal Court. And if this Court concludes that the State petitions were timely and then tolls for the entire pendency, he was – he showed up in Federal Court six months early. He had six months left on the statute of limitations. How long did it take him to file in the Superior Court, his very initial petition? It took four and a half months from the time of the conclusion of direct review, by which I mean once the petition for review is not in the Supreme Court, you have 90 days to file a cert petition. Well, that's an interesting question Judge Christian asked us because, say, assuming the Clark citation by the Court of Appeal is or includes the timeliness rule, all right? So when the Court of Appeal cites Clark, is it talking about the petition filed with the Court of Appeal or the petition filed with the Superior Court or both? It's talking – I believe it's talking about petition filed in the Court of Appeal. Now, the way the law plays out is that the ordinary rules of appellate law apply, so that if a later court would clearly indicate that a petition is untimely, I think it would be deemed that – well, it would be deemed untimely for that court. There's no dispute in this case that the Superior Court petition was deemed timely, and the Attorney General agrees we're entitled to tolling for that. So here I think if the court were to look at all the facts and conclude that the Court of Appeal petition is untimely, it would just stop the tolling at that point. But there's really no reason to believe that. The Attorney General does not explain why filing just four and a half months after conclusion of direct review is untimely. And we cited an amicus brief from the Habeas Corpus Resource Center filed in Walker v. Martin where they showed that 62 percent of non-capital habeas petitions filed five to six years after conclusion of direct review were deemed timely. We also cited a district court case, Arteaga, again, another one of these tolling cases, and there it found the petition timely where the first Superior Court petition was filed over seven months after the conclusion of direct review. We also cited In re Nunez in our reply brief, California Court of Appeal case, that says six months to file your initial Superior Court petition is timely. The Attorney General hasn't responded to these, and if he has cited a case finding an initial Superior Court petition untimely after four and a half months, I don't remember seeing it in the briefs. One thing I just see I would like to try to reserve some time, so I just want to say one more thing. Well, famous lawyer words, a couple more things. That's okay. You're not the first one today. No, I probably won't be the last. One is that there's just no way that Gonzalez's claim of ineffective assistance of appellate counsel is untimely. He had to wait for his appeal to conclude to be able to file that claim. Does he ever tell us when he got the transcripts? It's not clear. He submits a letter from the lawyer saying that I will, the appellate lawyer, say I'll give you the transcripts once the California Supreme Court action is over. That's in October, and then he files his Superior Court petition by the following May. I would, if the Court does not grant statutory tolling on the reasons I've discussed and would be looking at the transcripts under the other tolling provision, I would urge if the Court's not willing to grant tolling on the current record, then to remand us for more fact development. And we cite cases in our reply brief for the point that an evidentiary hearing is warranted. One of the cases is U.S. v. Battles, which the Attorney General actually cited. One final thing on equitable tolling. We have an equitable tolling argument. Equitable tolling is a flexible doctrine meant to do justice. We see in the record that while Gonzalez was waiting for the Court of Appeal to rule on his petition, he actually sent them a notice asking for a ruling. He went to the district court and said, hey, I'd like tolling. The district court said, I have no jurisdiction denied without prejudice. Neither the request nor the district court's order mentioned the Pace case and protective petitions. If that had happened here, given Gonzalez's diligence, it is. Well, the district court didn't mention it because the district, to the district court, it obviously was not a petition. I understand, but I think the court, if the court had mentioned you have a right under Pace, I think the record's clear Gonzalez would have taken the court up on it and filed a petition. I see I have just 40 seconds left. I'd like to reserve the balance of my time. Okay. Thank you. Morning. Morning, Your Honors. Bob Snyder, Deputy Attorney General for Respondent Warden Santoro. May it please the Court, there's a saying that he who hesitates is lost. And in this case, Petitioner didn't just hesitate. He sat on his rights for almost eight months. Appellant measures the time as four and a half months. But the problem with that measurement is our petitioner didn't seek cert in the U.S. Supreme Court. So he didn't use those 90 days grace that the federal court allows. The Supreme Court denied review in October of 2013. So what is your position about when the clock starts running? Because this is starting to sound like new law to me. The state clock began running in October of 2013. The federal clock began running at the completion of the time for cert. Okay. Well, you agree that the petition in the Superior Court was timely, right? You don't contest that it was timely. I would say that the Superior Court didn't find it untimely, Your Honor. Counsel, this is important to know.  The petition was timely in the eyes of the Superior Court judge. Are you making the argument? Is the state making the argument today that that wasn't timely? We need to know when to start the clock. So what's your position, please? The clock started for this petitioner under state law when the Supreme Court denied review in October of 2013. Right. And then what's your position on whether or not the Superior Court petition was timely, please? The Superior Court judge found it timely. The higher court, the Court of Appeal, found it untimely. So I think the answer, Your Honor, is it depends which court you go to. I'm not going to a court. I'm asking you. What's the state's position today about that time, please? Are you contesting that it was told? Because we need to know whether the Superior Court position was timely. No, the Superior Court found it timely, and we did concede that in our brief. Thank you. The problem is that the Court of Appeal looked at it, took longer, and realized that almost eight months had gone by. All right. So what was the interval between the Superior Court's denial of the writ and the filing in the Court of Appeal? How much time elapsed? It was about three weeks, Your Honor. Okay. It was three weeks. Now, is there any case that supports the finding of a three-week period untimely, unreasonable? Can you cite any case that holds that period to be some kind of a delay? No. Three weeks? No? There's not, Your Honor, but with all due respect. Well, the reason I ask that is because that has something to do with, you know, what the Court of Appeal meant when it, you know, cited C. to the timeliness rule, because it seems to me, I mean, you know, unreasonable. I mean, almost ludicrous to say three weeks is untimely. Does it seem ludicrous to you? I completely agree. But with all due respect, Your Honor, the interval between petitions isn't what's at issue here. The issue is when Petitioner began his round of Federal habeas. And the Court of Appeal looked at that and said it took seven and a half months. Wait a minute now. But all that depends upon, well, whether when he began his Federal habeas, whether that's timely or not depends on whether or not the state petitions were timely, right? Not necessarily, Your Honor, because in California, each of the habeas courts has original jurisdiction. Right, right. So the Court of Appeal. But that's the whole point. If the Court of Appeal's filing was untimely, then, you know, his state petitions weren't properly filed. Correct. And he doesn't get the benefit of that time. That's correct. So it's important to know, isn't it, whether or not his filing in the Court of Appeal was timely? The Court of Appeal timely was not timely. Not timely, sorry. It was not timely? No. Because why? Because the petitioner. It was only three weeks. It was three weeks from the Superior Court petition, but it was seven and a half months from when he should have begun. That's not when you measure it. Don't you measure it from the time of the Supreme Court decision? Yes. All right, then. Why do you go back to these, you know, months before the Supreme Court, I mean, the Superior Court decision? It was three weeks after the Superior Court decision, right, the filing in the Court of Appeal? Yes. Now tell me why that's untimely. The three weeks, Your Honor, is not untimely. What's untimely is the time between California's Supreme Court's denial of refuse and the instigation of Federal abuse. So arguing that even though the Superior Court treated the petition filing in the Superior Court as timely, that it wasn't timely. I mean, you have to go all the way back to the filing in the Superior Court, right? You can. I think the resolution of that, Your Honors, is the two judges saw it differently. Right. And so aren't you – this is really like pulling teeth. So isn't your position – there aren't trick questions. I'm trying to just understand your argument truly. Aren't you saying that even though the Superior Court treated that petition as timely, that the Court of Appeals, to judge Tashima's question, cited Inouye Clark, meaning not that the three-week interval was too much, but it went back and – your position, I think, is it went back and said that the Superior Court filing was untimely. Yes. May I try it this way? Although I think we have an answer. As someone who isn't from California, can you explain to me when a habeas petition filed after resolution of a direct appeal is timely?  It's timely under State law, Your Honor, and as seen by Federal law, when a reasonable time has – when we're still within a reasonable time. And a reasonable time is subject to a moving pendulum, it seems. Well, it moves, but not that far, because – Well, then, if we're going to entertain any notion of due process, how can a petitioner be entitled to tolling if his order or his request is clearly dismissed and he doesn't know where he's supposed to start, when it's supposed to end? I have to say it's a moving target. So how can we operate like that? Well, it's not specific, as it is in many other states. What I would submit is clear, Your Honor, is that almost eight months is a long time to wait from the conclusion of a direct review. So your argument, again, to just be specific, I think your theory is that the Superior Court petition was late. Opposing counsel said, we all know it's a moving target. California doesn't have a bright-line rule. But 30 days, 60 days, I think your position is we've got case law saying that's okay. Yes, both federal and state. And that this was four-and-a-half months from the time cert – the time for filing cert expired. You're going back even earlier than that, of course, right? Yes. And the reason we are is because the four-and-a-half months is a relevant period for federal statute. But for the state statute, he's free to file his petition as soon as California Supreme Court denies review. In fact, he can file it simultaneously. All right. So what do we do about – I've been waiting for all day to get to this question. What do we do about the fact that the Superior Court treated the petition as timely? I think you've conceded that. It sure looks to me like the Superior Court treated it as timely. And the State Court of Appeal must have been – must have had a different view. I think that's correct. I think both courts made rulings on the merits. You know, in Walker v. Martin, the Supreme Court said that the court can look at merits as well as procedural issues. The – I can't tell you why the Superior Court didn't rule on timeliness, but I can tell you that Clark unequivocally in this context means that the petition was untimely. I can't think of another case where it's preceded like this, where the Superior Court found it timely and the Court of Appeals puts an in re Clark site in there. Do you know of one? I don't. I know that there is often a lot of variance among rulings in the three levels of habeas review. I haven't seen that specific variance. But often the courts don't agree. I think the – I have a minute left, and I think what I'd like to leave with the Court is that under Federal law and State law, the Clark site in this case could only mean untimeliness. Walker v. … Well, why is that? His argument is that it's – there's a pin site in – as you know. Yes. There's a pin site, and that page of Clark, which we've all looked at, actually doesn't – is not limited to the timeliness argument. What's your response, please? Two, if I may. Number one, Clark telegraphs untimeliness. The district court found that it was an unmistakable signal. Second, if the court … Meaning just to be – meaning it's come to be known for that. Is that your … It is. It's an equivalency. Okay. And more importantly, if this court meant to cite Dixon or Waltrus, they could have said so. They didn't have to hide behind what the district called silently and derivatively cite those cases. So I think the last thing I'd like to say is, Your Honor, that the Federal rules are different sometimes, but as a matter of state and federal comedy, the state has a right to interpret its own laws with respect to timeliness, and I would submit that that's what occurred here. Thank you, counsel. Thank you very much. Would you please put two minutes on the clock? We took a lot of your time, but I do think we got to a place where we understand now, because the state both said that they weren't contesting timeliness of the superior court petition, and now I think we understand that they are. Do you want to respond to that, please, before you begin with whatever else you were going to say? Because to me, that's the nub of it. Well, that's a change in position from everything up until now in the district court and in the briefs here. They've said that the superior court petition does provide tolling, and they've provided no persuasive argument as to why this court, doing its job under Chavez, should find it untimely. And I think it's clear, but I just want to say, when a California habeas court finds that a petition is timely, I'm sorry, untimely, and if that's credited, that would stop the tolling at that point going forward, not going back in time. So I think the state's position here is basically sort of a strict liability argument, that once a court cites Clark, even though Clark stands for many things, as this court noted in Curio. I want to be clear on this now. First of all, you're saying that if I go back and read the state's brief again, it will be clear that they concede that the superior court decision is entitled to tolling. Yes, they do say we get tolling. And you also, it's also your position that that was the state's position in the district court? They said that in their motion to dismiss in district court, and the magistrate judge in his order granting the motion to dismiss also granted about three weeks of tolling for the time the superior court petition was filed. So Mr. Gonzales got a little more time but fell 27 days short. All right. I think the court is right to say this is an unusual case, and I think Mr. Gonzales did everything right, did what he was supposed to do. He was channeled in the state court. He acted diligently. And it's almost like a strike of lightning that this citation to Clark on a page with three different bars now prevents him from hearing on the merits. And this court in Sivak v. Hardison, 658 F3rd 898, said that an erroneously applied procedural bar does not bar federal review. I realize that's a procedural default case and not a statutory tolling case, but I think the idea applies here. Unless there's any further questions, I'll stop. It looks like not. Thank you both for your arguments. Thank you. We'll go on to the next case, Mr. 17-56665, Disney Enterprises v. Ed Ames.
judges: Tashima, Christen, Rufe